IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PAYRANGE LLC,

                    Plaintiff,                                OPINION and ORDER

        v.
                                                             26-cv-508-jdp
ALLIANCE LAUNDRY SYSTEMS LLC,

                    Defendant.

---

Plaintiff PayRange LLC manufactures dongles that process cashless payments, allowing consumers to make purchases using their credit cards or mobile devices. PayRange gets most of its revenue from the laundry industry. Its dongles are installed directly onto commercial laundry machines, such as those made by defendant Alliance Laundry Systems LLC. PayRange's dongles use two methods to process payments: (1) a "pulse" method, which sends an electrical signal to the machine that mimics payment with coins; and (2) a "serial bus protocol" method, which transmits codes between the machine and the dongle for payment and for real-time status updates.

In 2018, Alliance granted PayRange the right to use the specifications for its laundry machines to develop the serial bus protocol method. Alliance recently terminated this license. PayRange contends that Alliance is trying to put it out of business by telling its customers that its dongles will no longer work with Alliance's machines. PayRange asserts claims under the Sherman Act and the Clayton Act for monopolistic practices, a claim under the Lanham Act for false advertising, and related state-law claims.

PayRange moves for a preliminary injunction on its false advertising claim and on its state-law claims. The court will deny the motion because PayRange has not shown that it will

suffer irreparable harm absent preliminary relief. Alliance moves for leave to file a sur-reply, Dkt. 74, and the court will grant its motion.

ANALYSIS

PayRange wants the court to enjoin Alliance from making certain statements about the ability of PayRange's dongles to work with Alliance's laundry machines. *See* Dkt. 5, at 2. Specifically, PayRange wants to stop Alliance from saying that PayRange's dongles will not be authorized to work with Alliance's machines after June 8, 2026, and that PayRange's dongles worked with Alliance's machines only because of a now-terminated license. *See* Dkt. 61, at 41. PayRange also wants the court to enjoin Alliance from taking steps to prevent PayRange's customers from using its dongles. *See* Dkt. 5, at 2.

Alliance's sur-reply raises a preliminary issue that affects the court's consideration of PayRange's motion. Alliance contends that PayRange's reply improperly seeks new forms of relief beyond that sought in the initial motion. *See* Dkt. 74, Ex. 1, at 5–6. But PayRange's reply narrows the scope of the relief requested. PayRange initially requested that Alliance be "enjoined from making any statements that PayRange's products are used with Alliance equipment under a license with Alliance." Dkt. 5, at 2. In its reply, PayRange specifies that it wants to stop Alliance from saying that the license termination affects: (1) Alliance machines that were in use before June 8, 2026; (2) PayRange's pulse-based dongles; (3) PayRange's KioSoft technology; and (4) products that PayRange developed to work with the current

2

specifications of Alliance's machines. Dkt. 61, at 41.[1] The court sees nothing improper in PayRange's reply, and it turns now to the merits of the motion for preliminary injunction.

A party seeking a preliminary injunction must show that: (1) the party is likely to succeed on the merits of its claims; (2) the party is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the party's favor; and (4) an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). All elements must be satisfied to obtain preliminary injunctive relief. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). The irreparable-harm element is dispositive here.

A finding of irreparable harm to the moving party absent preliminary relief is a "threshold requirement for granting a preliminary injunction." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). Harm is sufficiently irreparable if the "legal remedies available to the movant are inadequate, meaning [that] they are seriously deficient as compared to the harm suffered." *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022). PayRange asserts that Alliance's conduct "poses an existential threat to PayRange's reputation and standing in the laundry business," which can constitute irreparable harm. Dkt. 6, at 36; *see Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 680 (7th Cir. 2012) (loss of goodwill and reputation). PayRange also asserts that Alliance's conduct will harm its customer base and market share, which can constitute irreparable harm when the fleeing customers are not fully identifiable and when the loss of business is not easily quantifiable. Dkt. 6, at 38; *see Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021); *DM Trans, LLC*, 38 F.4th at 618–20.

---

[1] PayRange acquired KioSoft Technologies, LLC in December 2025. Dkt. 39, ¶ 13. The parties do not explain what KioSoft technology is exactly, but KioSoft is a "payment solutions company," so the court understands that the technology establishes another way to process cashless payments. *Id.*

The basis for PayRange's asserted irreparable harm is an email message that Alliance sent to about 80 of its customers in mid-April 2026. About 75 of those customers were also PayRange's customers. *See* Dkt. 39, ¶ 53; Dkt. 40, ¶ 40. Alliance's email message indicated that Alliance controlled PayRange's ability to use its dongles with Alliance's laundry machines. Here is the pertinent part of Alliance's email message:

> **We control third-party payment system access.** PayRange's ability to integrate with Alliance equipment existed only through a control interface license that we previously granted. However, we have terminated that license with PayRange, which will be effective June 8, 2026. After this date, any PayRange technology . . . will not be authorized to work with any Alliance machines on a go-forward basis. PayRange technology . . . for Alliance machines sold prior to June 8, 2026[,] will not be affected at this time.

Dkt. 39, ¶ 54. Alliance's mid-April email message maps onto the preliminary injunctive relief that PayRange seeks—the email message suggests that PayRange's dongles will not be authorized to work with Alliance's machines after June 8, 2026, and that PayRange's dongles worked with the machines only because of Alliance's previous license with PayRange.

PayRange alleges that, after Alliance sent this email message, customers "expressed concern to PayRange," "questioned whether they will be permitted to continue using PayRange products after June 8, 2026," and "expressed fear that Alliance will refuse to sell them machines in the future if these customers support PayRange." *Id.*, ¶¶ 62–64. PayRange provides four examples of such customers:

> PayRange's third-largest customer, Jetz Service Co., asked PayRange whether it "need[ed] to start looking for another mobile platform come June 8th." *Id.*, ¶ 71.

> Supreme Laundry Service, LLC, asked PayRange, "Is this something we should be concerned about? Will [PayRange] not work on equipment after June 8?" *Id.*, ¶ 72.

4

> All Valley Washer Service asked PayRange, "[W]ill this get resolved, or do we need to pivot our business to another mobile app provider?"
>
> Northend Laundry asked PayRange, "Will we be able to deploy [PayRange] with new Speed Queen machines?"

*Id.*, ¶¶ 71–75. PayRange also says it fell about $550,000 short of projected sales for its KioSoft technology in April 2026.

PayRange has not shown that it will be irreparably harmed without its requested preliminary relief. As an initial matter, it is not clear that the relief that PayRange seeks would remedy its asserted harm. Alliance's statements are not the real problem; rather, the real problem is the *effect* that those statements are having on PayRange's customers. Stopping Alliance from talking will not redress the alleged damage to PayRange's goodwill and reputation. What PayRange really needs is for Alliance to issue clarifications or corrections regarding its prior statements. But Alliance has already done so.

The same day that Alliance sent its mid-April email message, Alliance held a conference call with customers to answer their questions about the email message. About 40 customers joined. Dkt. 40, ¶ 44. During the call, Alliance told customers:

> Any PayRange products used with Alliance machines already in the field before the termination date of the license agreement would not be affected;
>
> PayRange products using pulse technology to interface with Alliance machines would not be impacted; and
>
> Customers would still be able to use KioSoft technology on Alliance machines going forward, and Alliance had no plans to terminate KioSoft's license.

Dkt. 40, ¶ 45. In mid-May 2026, Alliance also sent a follow-up email message to more than 100 of its customers. Alliance's follow-up email message stated:

5

> PayRange devices that are already installed on Alliance machines are authorized and will continue to work even after June 8, 2026.
>
> The license previously granted to PayRange, which was terminated effective June 8, 2026, pertains to Alliance's proprietary serial payment protocol documentation, which provides enhanced machine integration capabilities. PayRange technology . . . that interfaces via Alliance's serial payment protocol will not be authorized with any Alliance machines sold after June 8, 2026.
>
> The license termination does not affect the pulse interface. PayRange may continue to interface with Alliance machines through the pulse interface—the same simple, quarter-simulating signal that has been a part of our industry since the 1980s.

Dkt. 41, Ex. 2, at 3. Alliance's follow-up email message also stated: "We want you to have options, to compare, and to choose the partners that best serve your operation." *Id.*

Alliance's conference call and follow-up email message clarified or corrected almost all the statements with which PayRange took issue. The call and email message clarified that customers still may use PayRange's products for any Alliance machine in use before June 8, 2026. They also clarified that customers still may use PayRange's pulse-based dongles and its KioSoft technology to interface with Alliance's machines. But Alliance's follow-up email message doubled down on its previous assertion that PayRange's dongles using the serial bus protocol method will not be authorized with any Alliance machines sold after June 8, 2026.

Even assuming that Alliance's assertion is false, PayRange has not shown that it will suffer irreparable harm if Alliance were allowed to continue making that assertion. PayRange alleges that three of its customers remain confused about whether PayRange's products will work with Alliance's laundry machines. Dkt. 64, ¶¶ 8–11. But PayRange does not explain why responding to these customers with Alliance's own statements would not suffice to clear up the confusion. PayRange also alleges that Alliance's distribution line of business cancelled its

6

purchase order with PayRange in June 2026. But PayRange does not explain how preventing Alliance from making statements to its customers would affect *Alliance*'s own decision to continue purchasing from PayRange. Finally, PayRange alleges that it fell short of its expected KioSoft sales in May 2026 (about $530,000 short) and June 2026 (about $600,000 short). *Id.*, ¶ 17. But Alliance has already clarified that KioSoft technology will not be affected, and it is not clear how Alliance's statement about PayRange's serial-bus-protocol-based products affects KioSoft sales. Regardless, even if Alliance were responsible for PayRange's shortfalls, that loss of business is quantifiable and therefore not the type of harm that warrants preliminary relief.

The court will deny PayRange's motion for a preliminary injunction.

## ORDER

IT IS ORDERED that:

1.  Defendant Alliance Laundry Systems LLC's motion for leave to file a sur-reply brief, Dkt. 74, is GRANTED.

2.  Plaintiff PayRange LLC's motion for a preliminary injunction, Dkt. 5, is DENIED.

Entered July 17, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge